**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
_____
                              :
DARRICK BAILEY,               :        Civil No. 04-1499 (FLW)
                              :
            Petitioner,       :
                              :
        v.                    :        O P I N I O N
                              :
NEW JERSEY ATTORNEY GENERAL,  :
et al.,                       :
                              :
            Respondents.      :
_____:
```

**APPEARANCES:**

Darrick Bailey, Pro Se
#000056
Special Treatment Unit
P.O. Box 905
Avenel, NJ 07001

Deborah Bartolomey
Deputy Attorney General
Division of Criminal Justice
Appellate Bureau
P.O. Box 086
Trenton, NJ 08625
Attorney for Respondent

**WOLFSON, District Judge**

Petitioner, Darrick Bailey, filed the within petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 [Docket Entry #1]. Respondents have filed an Answer. Petitioner has subsequently filed a request for pro bono counsel [Docket Entry #'s 6 and 7]. The Court has considered all submissions. For the

reasons set forth below, the petition and request for pro bono counsel will be denied.

**BACKGROUND**

**A.    Factual Background**

On April 4, 1988, the Red Bank Police Department was summoned to the Molly Pitcher Hotel because a waitress employed at the restaurant, who shall hereafter be referred to as "Jane Doe", had allegedly been sexually assaulted.  (Adult Presentence Report, Respondent Exhibit 13).

Jane Doe had recounted to law enforcement the following events.  At approximately 8:00 p.m., Jane Doe, who was working at the hotel at the time, received a call from Petitioner, who was also employed by the hotel as a waiter.  Petitioner asked Jane Doe to meet him by the back door of the kitchen.  (*Id.*)

Jane Doe subsequently met Petitioner by the back door. Petitioner asked Jane Doe to walk with him to the side of the building.  Jane Doe refused.  Petitioner then displayed his genitalia to Jane Doe.  Jane Doe proceed to explain to Petitioner that she was engaged to be married, and was not interested in any sort of sexual relationship with Petitioner.  Jane Doe then proceeded to walk back inside the hotel.  While turned, Petitioner took hold of Jane Doe by the neck and brought her, against her will, across the adjoining parking lot, and down a

flight of stairs to a lower level parking lot where he proceeded to rape her.  (*Id.*)

**B.   <u>Procedural History</u>**

On May 18, 1988, a Monmouth County Grand Jury indicted Petitioner on five counts, including: first degree kidnaping, contrary to <u>N.J.S.A.</u> 2C:13-1(b); 2C:14-2a(4) (count one); first degree aggravated sexual assault, contrary to <u>N.J.S.A.</u> 2C:14-2a(3)(6) (count two); second degree aggravated assault, contrary to <u>N.J.S.A.</u> 2C:12-1b(1) (count three); third degree terroristic threats, contrary to <u>N.J.S.A.</u> 2C:12-3b (count four); and third degree criminal restraint, contrary to <u>N.J.S.A.</u> 2C:13-2a (count five).

On August 10, 1988, Petitioner plead guilty to Count Two during a hearing before the Honorable Lawrence M. Lawson, J.S.C. pursuant to a negotiated plea agreement.

On November 11, 1998, Petitioner was sentenced to a custodial sentence of 20 years with a seven and one-half year parole bar.

On September 13, 1989, an appellate hearing was conducted by an ESOA panel.  Petitioner argued before the panel, claiming that his sentence was excessive.  Petitioner's appeal was denied on that same date.

Petitioner did not seek to appeal to a higher state court or federal court.  On March 5, 1996, Petitioner was paroled.

On May 8, 1997, while on parole, Petitioner was arrested and charged with lewdness.  He was thereafter sentenced to three years, four months and twenty-one days pursuant to a state parole violation statute.

On March 21, 2000, prior to Petitioner's scheduled release date of March 24, 2000, the New Jersey State Attorney General's Office filed a petition seeking Petitioner's civil commitment pursuant to the New Jersey Sexually Violent Predator Act [hereinafter "the SVPA"].  On that date, the court held that Petitioner was a sexually violent predator and issued a temporary commitment order.  The court further ordered that a commitment hearing to determine Petitioner's continuing need for involuntary commitment be held on April 10, 2000.  He was thereafter placed in a Special Treatment Unit.

Petitioner subsequently waived his statutory right to a hearing within twenty days and the commitment hearing was rescheduled for September 19, 2000.  At the conclusion of the hearing, the court determined that Petitioner was a sexually violent predator in need of commitment and remanded Petitioner to the Special Treatment Unit for care, custody and treatment.

Pursuant to statute, a timely hearing regarding Petitioner's involuntary commitment was conducted on March 20, 2001.  At the conclusion of the testimony, the court again categorized Petitioner as a sexually violent predator and ordered that he

4

remain in the custody of the Special Treatment Unit for additional treatment.

Petitioner thereafter filed a motion to withdraw his guilty plea. The Motion was considered by the trial court. The trial court determined that Petitioner's motion was in fact a motion for Post Conviction Relief ("PCR"), and applied the appropriate PCR standards of review in consideration of Petitioner's motion. On May 25, 2001, Petitioner's motion was denied.

On July 31, 2001, Petitioner filed a Notice of Appeal with the Superior Court of New Jersey, Appellate Division challenging the trial court's denial of Petitioner's application for PCR.

In accordance with statutory law, a second timely hearing regarding Petitioner's involuntary commitment was conducted on June 20, 21 and 25, 2002. At the conclusion of the hearing, the court again determined that Petitioner remained a sexually violent predator and ordered that he remain in the custody of the Special Treatment Unit for additional treatment.

On June 20, 2003, the Superior Court of New Jersey, Appellate Division affirmed the denial of PCR.

On June 30, 2003, Petitioner filed a Notice of Petition for Certification of the Appellate Divisions' denial of Petitioner's PCR. The New Jersey Supreme Court denied certification on October 8, 2003.

On March 29, 2004, Petitioner filed the instant Habeas Corpus Petition.  Respondents timely Answered.

On September 8, 2004, Petitioner filed a "request for pro bono counsel appointment."

<u>**DISCUSSION**</u>

**A.   <u>Petitioner's Claims.</u>**

Petitioner asserts the following arguments for habeas relief:

1.   The guilty plea was not voluntary.
2.   The current commitment violates Doctrine of Fundamental Fairness.
3.   The current commitment is violative of the Ex Post Facto Clause.

<u>See</u> Petition for Writ of Habeas Corpus.

Petitioner further asserts, in support of his request for pro bono counsel, that the issues Petitioner has set forth are complex and that he is not legally savvy.

**B.   <u>Pro Se Standard.</u>**

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  A <u>pro</u> <u>se</u> habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United</u>

States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**C.** **Petitioner's Request for Pro Bono Counsel is Denied.**

There is no "automatic" constitutional right to counsel in a federal habeas corpus proceeding. Coleman v. Thompson, 501 U.S. 722, 752 (1991); Reese v. Fulcomer, 946 F.2d 247, 263 (3d Cir. 1991), cert. denied, 503 U.S. 988 (1992); see also Smith v. Angelone, 111 F.3d 1126, 1133 (4th Cir. 1997), cert. denied, 521 U.S. 1131 (1997); Williams v. Turpin, 87 F.3d 1204, 1210 (11th Cir. 1996); Morrison v. Duckworth, 898 F.2d 1298, 1300-01 (7th Cir. 1990); Hooks v. Wainwright, 775 F.2d 1433, 1438 (11th Cir. 1985), cert. denied, 479 U.S. 913 (1986). "It has not been held that there is any general obligation of the courts, state or federal, to appoint counsel for prisoners who indicate, without more, that they wish to seek post-conviction relief." Johnson v. Avery, 393 U.S. 483, 488 (1969); Wainwright v. Torna, 455 U.S. 586, 587 (1982); see also Mitchell v. Wyrick, 727 F.2d 773, 774 (8th Cir. 1984)(appellant not entitled to counsel at state post-conviction proceedings because they are civil in nature and not covered by the Sixth Amendment which applies only during the pendency of a criminal case), cert. denied, 469 U.S. 823 (1984).

Any person seeking relief under the federal habeas statutes may be granted counsel, only however, "whenever the United States magistrate or the court determines that the interests of justice

so require and such person is financially unable to obtain representation." 18 U.S.C. § 3006A(g) (1988)("Discretionary appointment").

Initially, the district court must first decide if the petitioner has presented a nonfrivolous claim. See Reese, 946 F.2d at 263-64; accord Abdullah v. Norris, 18 F.3d 571, 573 (8th Cir. 1994); see also Parham, 126 F.3d at 456-57.  If the court determines that a claim is not frivolous, the court next must determine whether the appointment of counsel will benefit both the petitioner and the court.  See Reese, 946 F.2d at 264; cf. Parham, 126 F.3d at 457.  Factors influencing a court's decision include the complexity of the factual and legal issues in the case, as well as the pro se petitioner's ability to investigate facts and present claims.  See Battle v. Armontrout, 902 F.2d 701, 702 (8th Cir. 1990); accord McCall v. Benson, 114 F.3d 754, 756 (8th Cir. 1997); see also Parham, 126 F.3d at 457-58.  Courts have held, for example, that there was no abuse of a district court's discretion in failing to appoint counsel when no evidentiary hearing was required and the issues in the case had been narrowed, see Terrovona v. Kincheloe, 912 F.2d 1176, 1177 (9th Cir. 1990), cert. denied, 499 U.S. 979 (1991), or the issues were "straightforward and capable of resolution on the record," Ferguson v. Jones, 905 F.2d 211, 214 (8th Cir. 1990), or the petitioner had "a good understanding of the issues and the

8

ability to present forcefully and coherently his contentions." La Mere v. Risley, 827 F.2d 622, 626 (9th Cir. 1987).

Here, there is no indication that Petitioner does not fully comprehend the issues he presents in his § 2254 petition. His petition, and the legal memorandum submitted in support thereof, also demonstrate his ability to present his claims "forcefully and coherently." Further, the Court finds that the issues raised by Petitioner are neither factually nor legally complex. Petitioner asserts straightforward claims of ex post facto confinement, involuntary plea of guilty and the Fundamental Fairness doctrine. Such claims are not often meritorious. Therefore, because Petitioner has not presented sufficient facts that would compel the appointment of counsel in the interests of justice, the Court chooses not to exercise its discretionary power to assign pro bono counsel to Petitioner at this time.

***PROCEDURAL BARS***

## D.   Petitioner's Writ of Habeas Corpus is Procedurally Time-Barred.

Respondent asserts the affirmative defense that the instant petition is time-barred. Specifically, Respondent argues that Petitioner's instant petition was filed 200 days in excess of the statutory deadline. Respondent argues that as a result, the instant petition should be procedurally barred.

9

28 U.S.C. § 2244 provides in relevant part that:

> (d)(1) A 1-year period of limitation shall apply
> to an application for a writ of habeas corpus by a
> person in custody pursuant to a judgment of a State
> Court.  The limitation period shall run from the
> latest of -
>
> (A) that date on which the judgment became final by
> the conclusion of direct review or the expiration
> of direct review or the expiration of the time for
> seeking such review;
>
> (2) The time during which a properly filed
> application for State post-conviction or other
> collateral review with respect to the pertinent
> judgment or claim is pending shall not be counted
> toward any period of limitation under this subsection.

"Pending" PCR's or other collateral reviews have been

defined as follows:

> [a]n application is pending as long as the ordinary
> state collateral review process is 'in continuance' - -
> i.e. 'until the completion of' that process.  In other
> words, until the application has achieved final
> resolution through the State's post-conviction
> procedures, by definition it remains 'pending.'

The time between the conclusion of direct review and the filing

of the PCR motion is counted towards the one-year limitations

period embodied in § 2244.  See Ferguson v. Palmateer, 321 F.3d

820, 823 (9th Cir. 2003)(section 2244(d) does not permit

reinitiation of one-year limitations period that has ended before

state PCR limitations period expired), cert. denied, 124 S. Ct.

328 (2003); Tinker v. Moore, 255 F.3d 1331, 1333-34 (11th Cir.

2001)(state court PCR petition timely filed after the expiration

of one-year federal limitations period does not toll or

10

reinitiate federal limitations period); <u>Washington v. Byrd</u>, No. CIV.A.00-6389, 2002 WL 461729 at *6 (E.D. Pa. March 22, 2002)(time spent "preparing" PCR motions does not toll one-year limitations period)(unpubl.); <u>Powell v. Williams</u>, 981 F. Supp. 1409, 1414 (D.N.M. 1997)(time between final judgment and commencement of state habeas proceedings is counted toward one-year limitations period); <u>Hughes v. Irvin</u>, 967 F. Supp. 775, 778 (E.D.N.Y. 1997)(time periods between various state PCR applications counts toward one-year limitations period).

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter the "AEDPA"), those individuals whose convictions became final prior to the enactment of the AEDPA must have filed any habeas corpus petitions by April 23, 1997.

Convictions become "final" at the conclusion of direct review or the expiration of the time for seeking such review. The expiration of the time for seeking review occurs when the United State Supreme Court denies the petition for writ of certiorari or the time to file a petition for certiorari has expired. <u>Smith v. Bowersox</u>, 159 F.3d 345 (8th Cir. 1998).

In the instant case, the latest possible AEDPA start date for statute of limitation purposes is April 10, 2000, the date of the first hearing in which the state court determined that

11

Petitioner be civilly committed. [1]  As such, Petitioner had one year from April 10, 2000, or until April 10, 2001, to file for habeas corpus relief.

Any PCR relief sought during that time tolls the § 2254 period of limitation.  Petitioner filed his PCR petition on April 18, 2001, tolling the limitations period eight days beyond the one-year mark.  On October 8, 2003, the New Jersey Supreme Court filed its denial of the petition for certification, ending the tolling period.  Petitioner did not file his habeas petition until March 29, 2004.  Therefore, even under the most favorable calculations for Petitioner, he nevertheless filed his petition 180 days beyond the one-year statute of limitations period as prescribed by the AEDPA.

**Equitable Tolling**

The Third Circuit has held that the one-year period of limitations in § 2244 functions as a statute of limitations, and as such, is subject to equitable tolling.  See Miller v. New Jersey State Dep't of Corrections, 145 F.3d 616, 618 (3d Cir. 1998).  Equitable tolling applies when "'the principles of equity would make [the] rigid application [of a limitation period] unfair.'"  Id. (quoting Shendock v. Office of Workers' Compensation Programs, 893 F.2d 1458, 1462 (3d Cir. 1990)); see

_____

[1] Because Petitioner's conviction did not become final until the year 2000, the April 23, 1997 AEDPA deadline does not apply.

12

also <u>Schlueter v. Varner</u>, 384 F.3d 69, 2004 WL 2035180 at *5 (3d Cir. Sept. 14, 2004)(stating that equitable tolling should only be applied in rare situations).  This "unfairness" occurs when the petitioner has "'in some extraordinary way . . . been prevented from asserting his or her rights.'"  <u>Id.</u> (quoting <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380 (3d Cir. 1994)).  Equitable tolling, therefore, "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum."  <u>Jones v. Morton</u>, 195 F.3d 153, 159 (3d Cir. 1999)(quoting <u>United States v. Midgley</u>, 142 F.3d 174, 179 (3d Cir. 1998)); <u>see also Williams v. Taylor</u>, 2002 WL 1459530 at *3 (D. Del. July 3, 2002).

Here, Petitioner has not demonstrated any reason for his delay in filing the instant petition.  Additionally, Petitioner has not demonstrated that the delay in filing was because he had been misled or prevented from asserting his rights.  He has not asserted that he filed in the wrong forum.  Equitable tolling should be applied sparingly, only when sound legal principles and the interest of justice demand so.  <u>See Jones</u>, 195 F.3d at 159 (other citations omitted).  In this case, this Court holds that equitable tolling should not apply.

This Court concludes that the instant petition was not filed timely, and therefore must be procedurally dismissed for failure to comply with the mandates of the AEDPA, 28 U.S.C. § 2244. Although the time for filing the petition was statutorily tolled during the pendency of petitioner's post-conviction relief motion, the petition remains untimely because 180 days elapsed from the conclusion of his direct review to the time the petitioner filed his PCR motion and the instant petition.

**E.   Petitioner's Writ of Habeas Corpus is Procedurally Barred as Petitioner is not "In Custody" for the Conviction Under Attack.**

Petitioner has completed serving his sentence for the underlying 1988 conviction and subsequent parole violation. Petitioner is currently civilly committed pursuant to the State of New Jersey's SVPA.  Because Petitioner is not "in custody" as that phrase is contemplated under 28 U.S.C. § 2254, this Court does not have jurisdiction to consider his claims.

Under 28 U.S.C. § 2241(c), the basic scope of habeas corpus relief, habeas jurisdiction "shall not extend to a prisoner unless . . .[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); Advisory Committee Notes, Rule 1, Rules Governing Section 2254 Cases.  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody" at the time the

14

habeas petition was filed; and (2) the custody is/was "in violation of the Constitution or laws or treaties of the United States." Maleng v. Cook, 490 U.S. 488, 490 (1989).

The United States Supreme Court has interpreted the custody requirement set forth in § 2241(c)(3) in Maleng v. Cook, 490 U.S. 488, 490 (1989).  The Supreme Court held that a petitioner was not "in custody" under a 1958 conviction whose sentence had expired in 1978, when said petitioner filed his habeas petition in 1985 in an attempt to attack his 1958 conviction.  The Court stated that a habeas petitioner must be "in custody" under the conviction or sentence under attack at the time his petition is filed. Id. at 490-91 (citing Carafas v. LaVallee, 391 U.S. 234, 238 (1968).

This District has also had occasion to consider whether a § 2254 petitioner who was civilly committed pursuant to New Jersey's SVPA was considered "in custody."  In Fournier v. Brown, Slip Copy, 2005 WL 1216971 (D.N.J. 2005), the court was faced with an analogous set of circumstances.  Specifically, the petitioner was convicted in 1995 of child endangerment and lewdness.  His custodial term expired in 2001.  One month before the petitioner's release, a hearing was conducted and it was determined that the petitioner was a danger to the community as a sexually violent predator and was thereafter civilly committed. In 2003, the petitioner filed his § 2254 petition.  The court

15

held that the petitioner was not "in custody" for the 1995 conviction.  Because the petitioner was not "in custody", the court determined that it lacked subject matter jurisdiction to consider the merits of the petitioner's habeas motion.

In the instant motion, Petitioner filed his habeas motion on March 29, 2004.  At that time, Petitioner had completed his custodial term two years prior.  Although Petitioner currently is civilly committed pursuant to the provisions of New Jersey's SVPA, Petitioner is not currently considered "in custody" and therefore, this Court lacks subject matter jurisdiction to consider Petitioner's claims.

### *SUBSTANTIVE ANALYSIS*

### F.   <u>Voluntariness of Guilty Plea - Petitioner's Ground One.</u>

Petitioner's first ground for relief asserts that his plea of guilty was not voluntary as he was not advised that the State could ultimately use his resulting conviction to involuntarily commit him under the SVPA.

Due process requires that guilty pleas be entered intelligently and voluntarily.  <u>See</u> <u>Boykin v. Alabama</u>, 395 U.S. 238, 242 (1969).  A plea does not qualify as intelligent "unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"  <u>Bousley v. United States</u>, 523 U.S. 614, 618 (1998) (quoting <u>Smith v. O'Grady</u>, 312

16

U.S. 329, 334 (1941).  Where, prior to pleading guilty, a
defendant is provided with a coy of the indictment which recites
the charge against him, [s]uch circumstances, standing alone,
give rise to a presumption that the defendant was informed of the
nature of the charge against him." Id. (citation omitted).  A
guilty plea entered by one fully aware of the direct consequences
of the plea is voluntary "'unless induced by threats (or promises
to discontinue improper harassment), misrepresentation (including
unfulfilled or unfulfillable promises), or perhaps by promises
that are by their nature improper as having no proper
relationship to the prosecutor's business (e.g. bribes).'" Brady
v. United States, 397 U.S. 742, 755 (1970) (quoting Shelton v.
United States, 246 F.2d 571, 572 n.2 (5th Cir. 1956) (en banc),
rev'd on confession of error on other grounds, 356 U.S. 26
(1958)).  The Court of Appeals for the Third Circuit has held
that the only direct consequences relevant to evaluating the
voluntariness of a guilty plea are the maximum prison term and
fine for the offense charged.  See Parry v. Rosemeyer, 64 F.3d
110, 114 (3d Cir. 1995), cert. denied, 516 U.S. 1058 (1996),
superseded by statute on other grounds as stated in Dickerson v.
Vaughn, 90 F.3d 87 (3d Cir. 1996).

The above standards govern the validity of a guilty plea
even when a criminal defendant protests his innocence despite his
entry of a guilty plea.

> [W]hile most pleas of guilty consist of both a waiver
> of trial and an express admission of guilt, the latter
> element is not a constitutional requisite to the
> imposition of criminal penalty [when, as in the instant
> case,] a defendant intelligently concludes that his
> interests require entry of a guilty plea and the record
> before the judge contains strong evidence of actual
> guilty.

North Carolina v. Alford, 400 U.S. 25, 37 91970).  The Supreme

Court noted further that "[b]ecause of the importance of

protecting the innocent and of insuring that guilty pleas are a

product of free and intelligent choice, various state and federal

court decisions properly caution that pleas coupled with claims

of innocence should not be accepted unless there is a factual

basis for the plea and until the judge taking the plea has

inquired into and sought to resolve the conflict between the

waiver of trial and the claim of innocence."  Id. at 38 n.10

(citations omitted).  Applying Alford, the Court of Appeals for

the Third Circuit has held that "there must always exist some

factual basis for a conclusion of guilt before a court can accept

an Alford plea."  United States v. Mackins, 218 F.3d 263, 268 (3d

Cir. 2000), cert. denied, 531 U.S. 1098 (2001).

Whether a guilty plea was entered intelligently and

voluntarily is primarily a question of law subject to de novo

review; to the extent that determination depends upon findings of

historical fact by the state court, however, those factual

findings carry a presumption of correctness.  See Marshall v.

Lonberger, 459 U.S. 422, 431-32 (1983); Candelaria v. Lemaster,

18

201 F.3d 447 910th Cir. 1999) (Table, text in Westlaw); Hunt v. Dailey, 54 F.Supp.2d 1038, 1041-42 (D.Kan. 1999) (collecting cases).

Most courts look to the totality of events and circumstances preceding entry of a guilty plea in determining whether the defendant was informed and understood the nature of the charge. Some of the factors to be considered include:  (1) the complexity of the charge; (2) defendant's age; (3) defendant's record; (4) defendant's intelligence and education; (5) defendant's ability to comprehend what was being said to him; and (6) whether he was represented by counsel.  See United States v. Cefaratti, 221 F.3d 502, 508 (3d Cir. 2000); United States v. Fernandez, 205 F.3d 1020, 1025 (7th Cir. 2000); United States v. Mosley, 173 F.3d 1318, 1322-23 (11th Cir. 1999); United States v. Marks, 38 F.3d 1009, 1012 (8th Cir. 1994).

Here, Petitioner does not argue that his plea of guilty to the underlying offense was not knowing or voluntary, or that he was uneducated or received insufficient guidance from his counsel.  Rather, Petitioner argues that had he known that the plea would have made him eligible for civil commitment, he would not have plead guilty.  Petitioner argues that because he didn't know that a consequence of his plea could be civil commitment, his plea was involuntary.

19

However, the SVPA was not enacted at the time Petitioner plead guilty.  Therefore, at the time relevant, neither he nor his counsel could know the possible civil consequences to the plea.  Further, the civil commitment was not a direct consequence of Petitioner's guilty plea.  Instead, an after-enacted civil statute, with its own self-contained elements and its own judicial process became the catalyst for Petitioner's civil commitment.  Indeed, Petitioner's civil commitment to date is a result of his current mental state, not because of his predicate conviction for aggravated sexual assault.  Yearly assessments have been conducted and the basis for the State courts' determination to keep Petitioner committed has always been because Petitioner continued to demonstrate that he was a sexually violent predator in need of continued treatment.  Had Petitioner demonstrated at any of his assessments that he no longer maintained the propensity to commit sexually violent acts, his civil commitment would have been terminated.

This Court therefore finds that Petitioner's guilty plea to the underlying aggravated sexual assault charge was knowing and voluntary.  The after-enacted SPVA statute is civil in nature, and Petitioner's present commitment is based upon a standard that is wholly separate from the guilty plea Petitioner previously entered.  Petitioner is not entitled to relief on this claim.

G.   **Ex Post Facto and Fundamental Fairness - Petitioner's Grounds Two and Three.**

Petitioner next argues that the civil commitment imposed upon him imposes a punishment, and as such, violates his ex post facto rights pursuant to the Fundamental Fairness Doctrine.

The Ex Post Facto Clause cannot be violated without the imposition of punishment.  Further, constitutional prohibitions against retroactive punishment can only apply to criminal legislation.  See Kansas v. Hendricks, 521 U.S. 346, 361 (1997); Seling v. Young, 531 U.S. 250 (2001) (holding that a state's legislative and judicial determination that its sexually violent predator statute was civil rather than criminal precluded double jeopardy and ex post facto challenges by petitioners committed under said statute).

The New Jersey SVPA is essentially the same as the Kansas and Washington statutes that were examined and upheld by the United States Supreme Court in Hendricks and Seling.  Like those state statutes, the New Jersey SVPA does not establish criminal proceedings.  Further, New Jersey has formally determined that the SVPA is a civil enactment, satisfying the requirements of Hendricks and Seling.  See N.J. Stat. Ann. 30:4-27.24 (New Jersey Assembly Appropriations Committee Statement stating that the SVPA "establishes a civil procedure for the involuntary commitment of sexually violent predators").

21

Because the SVPA is a civil statute as previously determined by the State of New Jersey, Petitioner is precluded from asserting ex post facto claims under the Fundamental Fairness Doctrine.

**H.   Certificate of Appealability:   28 U.S.C. § 2253.**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 1537 U.S. 322 (2003).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, jurists of reason would not find the Court's procedural or substantive disposition of this case debatable. Accordingly, no certificate of appealability will issue.

### CONCLUSION

For the foregoing reasons, Petitioner's application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is hereby DENIED.  An appropriate Order accompanies this Opinion.

The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253 and <u>Slack v. McDaniel</u>, 529 U.S. 473 (2000).


<u>s/Freda L. Wolfson</u>
HONORABLE FREDA L. WOLFSON
United States District Judge


Dated: August 8, 2006